155 N.J. Super. 64 (1977)
382 A.2d 386
REGINA RICE AND UNION COUNTY REGIONAL HIGH SCHOOL TEACHERS ASSOCIATION, INC., APPELLANTS,
v.
UNION COUNTY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1977.
Decided December 29, 1977.
*67 Before Judges LYNCH, BISCHOFF and KOLE.
Mr. Gerald M. Goldberg argued the cause for appellants (Messrs. Goldberg & Simon, attorneys; Mr. Jeffrey S. Laden on the brief).
Mr. Franz J. Skok argued the cause for respondent (Messrs. Johnstone & O'Dwyer, attorneys).
The opinion of the court was delivered by BISCHOFF, J.A.D.
This appeal presents issues relating to the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq., which became effective January 19, 1976, and the exception pertaining to personnel matters contained therein. N.J.S.A. 10:4-12 b(8).
Defendant Union County Regional High School Board of Education (hereafter board), being a regional board of education, was required by N.J.S.A. 18A:13-10 and N.J.S.A. 18A:13-17 to submit a proposed budget for the 1976-1977 term to the voters of the regional district at the annual school election to be held on the first Tuesday in March.
*68 The proposed budget was prepared during nine sessions of closed meetings of the board held between November 11, 1975 and January 13, 1976. During these meetings it was determined that, for reasons of economy, it was necessary to reduce the employment staff of the board by 20 positions.
A tentative school budget, dated January 13, 1976, which had been agreed upon at the meeting held that date and which reflected the decision to eliminate the 20 positions, was adopted January 20, 1976.
Between February 9 and March 1 representatives of the board attended 17 meetings of various groups such as PTA, service clubs and parents' committees, as well as one meeting of the municipal governing body, at which meeting the budget was explained. A public hearing on the budget was held at a regular meeting of the board on February 23, 1976, following which the budget was formally adopted in final form for submission to the voters.
The budget so adopted by the board was defeated at the school election on March 2, 1976. The constituent municipalities  after meeting with the board on March 15, 1976  certified a budget $250,000 less than the one which the voters had failed to approve, thus requiring the board to consider further reductions in its employment staff.
About April 2, 1976 the board's administrative staff mailed to each board member a list of names of specific employees recommended for termination. No action was taken by the board with respect to such recommendations until an adjourned regular meeting, held on April 20, 1976. At that meeting, at the conclusion of a portion which was open for public discussion, the minutes disclose that the following occurred:
Mr. Vitale, President, called for a resolution to be offered for the Board of Education to meet in Executive Session.
He announced that privileged personnel items would be discussed in Executive Session. He further stated that any decisions reached during Executive Session would be made known to the public when action is formally taken by the Board. *69 Mr. Vitale announced that the Board would return to regular public session following the conclusion of the Executive Session.
Following the adoption of the requested resolution and the holding of the executive session, the regular public meeting was resumed and several resolutions relative to personnel matters were adopted. One of the resolutions so adopted provided that "the named personnel in the positions set forth next to their names, in the list attached hereto and made a part hereof, will be terminated from their employment effective June 25, 1976 for the reasons hereinafter set forth * * *."
The names of 17 employees were on the list. Seven of them were nontenured teachers. The termination of these 17 employees is the reason for this appeal.
The board gave all the nontenured teachers affected by the resolution the notice required by N.J.S.A. 18A:27-10 prior to April 30, 1976, and they were all afforded an opportunity for a hearing pursuant to the rule of Donaldson v. North Wildwood Bd. of Ed., 65 N.J. 236 (1974).
Plaintiffs Regina Rice and the Union County Regional High School Teachers Association, Inc. (Association) on June 4, 1976 instituted this action in lieu of prerogative writs seeking "an order holding the personnel action set forth in defendant's resolution of April 20, 1976 null and void" because of the failure of the board to comply with the Open Public Meetings Act. The matter was submitted for determination on affidavits and oral argument, and the trial judge, by letter opinion, held the action of the board constituted substantial compliance with the statute and judgment was entered dismissing the complaint.
Preliminarily we note that some arguments in both the trial court and this court were concerned with the timeliness of the institution of this action. These procedural contentions are without merit, and we pass to a consideration of the substantive issues.
The statute in question contains a detailed statement of both the purpose and the public policy to be served by it. *70 N.J.S.A. 10:4-7. The history of this type of legislation and the reasons for it are traced in the case of Polillo v. Deane, 74 N.J. 562, 570-72 (1977).
It is sufficient for our present purposes to note that such legislation is in keeping with strong present-day policies "favoring public involvement in almost every aspect of government." Id. at 569. This legislation is to be liberally construed, N.J.S.A. 10:4-21, and "strict adherence to the letter of the law is required in considering whether a violation of the act has occurred." Id. at 578.
It necessarily follows that any exception from the full public disclosure mandated by the statute is to be strictly construed. Illinois News Broadcasting Ass'n v. Springfield, 22 Ill. App. 3d 226, 317 N.E.2d 288, 290 (App. Ct. 1947); Palkoski v. Garcia, 19 N.J. 175, 181 (1955); Wright v. Vogt, 7 N.J. 1, 7 (1951); Accardi v. North Wildwood Mayor and Council, 145 N.J. Super. 532, 543 (Law Div. 1976).
Plaintiffs contend that (1) the resolution adopted April 20, 1976, calling for an executive session to discuss personnel matters, was in violation of N.J.S.A. 10:4-13, and (2) the board failed to comply with N.J.S.A. 10:4-12 (b) (8) by not giving the 17 terminated employees notice of the meeting so they could exercise their right to request in writing a public discussion of the matter.
The two sections of the statute thus implicated are:

N.J.S.A. 10:4-12b. A public body may exclude the public only from that portion of a meeting at which the public body discusses:
* * * * * * * *
(8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.
*71 and

N.J.S.A. 10:4-13. No public body shall exclude the public from any meeting to discuss any matter described in subsection 7.b. [Section 10:4-12.b.] until the public body shall first adopt a resolution, at a meeting to which the public shall be admitted:
a. Stating the general nature of the subject to be discussed; and b. Stating as precisely as possible, the time when and the circumstances under which the discussion conducted in closed session of the public body can be disclosed to the public.
The stated purpose of the executive session requested by the president of the board was clearly within the exception to the Open Public Meetings Act, N.J.S.A. 10:4-12b(8), which permits a closed session to discuss the termination of employment of employees. As a result of events that preceded the adoption of the resolution for an executive session, the public there assembled were fully aware of the nature of the personnel matters to be discussed in the executive session. The necessity for a reduction in the number of employees was a matter of common knowledge as a result of the meetings and discussions that had occurred over the preceding weeks in various public meetings.
It was announced to the public at the time the resolution was adopted that any decision reached during the executive session would be made known to the public when action was formally taken on it. The decisions reached at the executive session were revealed the same evening with the adoption of the resolution terminating the personnel named on a list incorporated into the resolution. There was full compliance by the board with N.J.S.A. 10:4-13 in the adoption of the resolution in question and in proceeding to hold the closed meeting.
It is argued that the procedure used did not comply with the statutes because the reasons for the termination of the 17 employees was not disclosed. We disagree.
The reasons for the decision to terminate these specific employees need not be revealed or stated. To do so would circumvent the very purpose for permitting personnel *72 matters to be discussed in closed sessions. The public policy behind the personnel exception to the Open Public Meetings Act is clearly stated in N.J.S.A. 10:4-7 and indicates a concern for "personal privacy or guaranteed rights of individuals [which] would be clearly in danger of unwarranted invasion" if these matters were to be discussed in public.
We hold that, under the circumstances presented here, the board complied with N.J.S.A. 10:4-13 in the adoption of the resolution calling for the Executive or closed session of April 20, 1976.
Plaintiffs next argue that the board failed to comply with the Open Public Meetings Act by failing to give the 17 terminated employees advance notice of the meeting so they could exercise their right to request, in writing, a public discussion of the matter.
The trial judge held that: (1) advance notice to the terminated employees was not required because the only notice required by the act is "adequate notice of a meeting," as defined in N.J.S.A. 10:4-8(d), and that since adequate notice of the meeting under that section of the statute had been given, no further notice was required; (2) nontenured employees were chargeable with knowledge that their contracts might not be renewed, and (3) in any event, under N.J.S.A. 10:4-15(a) any action for which notice is required is not voidable for failure to conform with any notice required by the act. He therefore held that any action for which notice might be required by implication only cannot be voided.
This reasoning of the trial judge, in effect, renders useless and inoperative the statutory right granted an employee to have a public discussion of his or her personnel matter. It is clear that the sole purpose for the personnel exception is to protect individual privacy. The statute provides a method by which the individual may forego this personal privacy and have a public discussion on the matter. We must presume that the Legislature knew what it was doing and did not intend to establish a useless procedure. Gabin v. Skyline *73 Cabana Club, 54 N.J. 550, 555 (1969); Jones v. East Windsor Reg'l Bd. of Ed., 143 N.J. Super. 182, 191 (Law Div. 1976).
All states have now enacted some form of Open Public Meetings law. Polillo v. Deane, supra 74 N.J. at 570, n. 4. Approximately half of the statutes contain exceptions shielding personnel matters from public discussion, but they provide for public discussion of the personnel matter if a request is made by the employee of the public body for that purpose.
The reasons for such exceptions are stated in an article entitled, "Open Meetings Statutes: The Press Fights for the Right to Know," 75 Harv. L. Rev. 1199 (1962), in the following terms:
In several states the legislature has explicitly set forth the various subjects that may be discussed behind closed doors. Most commonly listed is the appointment or discharge of, or the investigation of charges against, government employees. * * * When possible disciplinary action or dismissal is being considered, premature publicity can cause great and often unjustified damage to personal reputations. To be sure, secrecy in such matters may increase the likelihood or irresponsible character assassination or political favoritism, but a number of statutes afford the employee some protection by granting him an option to demand a public hearing. [at 1208.]
The plain implication of the personnel exception to the New Jersey Open Public Meetings Act is that if all employees whose rights could be adversely affected decide to request a public hearing, they can only exercise that statutory right and request a public hearing if they have reasonable advance notice so as to enable them to (1) make a decision on whether they desire a public discussion and (2) prepare and present an appropriate request in writing.
Here the members of the board were furnished about April 2, 1976 with a list of those to be considered for termination. The record discloses that there was a regular meeting of the board on April 6, 1976. Admittedly, all the members of the board had the list at that meeting and the issue was not discussed *74 then. No reason is advanced for failing to give notice to those who were potential targets for termination of the proposed discussion on April 20, 1976.
We accordingly hold that the 17 terminated employees were entitled to reasonable notice of the intention of the board to consider personnel matters related to them.
We finally consider the remedy, if any, to be afforded in light of our conclusion that the statute was violated.
Plaintiffs are (1) Regina Rice, who identifies herself as "a person and member of the public within the meaning of the Open Public Meetings Act." N.J.S.A. 10:4-15. She is president of the Union County Regional High School Teachers Association but was not one of the teachers terminated; (2) Union County Regional High School Teachers Association. Both argue that they are proper party plaintiffs empowered and authorized to maintain this action by reason of N.J.S.A. 10:4-15(a) and (b), which provide:
Any action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable in a proceeding in lieu of prerogative writ in the Superior Court, which proceeding may be brought by any person within 45 days after the action sought to be voided has been made public * * *.
Any party, including any member of the public, may institute a proceeding in lieu of prerogative writ in the Superior Court to challenge any action taken by a public body on the grounds that such action is void for the reasons stated in subsection a. of this section, and if the court shall find that the action was taken at a meeting which does not conform to the provisions of this act, the court shall declare such action void.
Moreover, the Association argues that as the duly elected representative of the employees of the board, it has standing to institute and maintain proceedings to enforce and protect employees rights under the school law, Title 18A, either with or without the express authorization of the individuals whose rights may be adversely affected, citing Winston v. South Plainfield Bd. of Ed., 125 N.J. Super. 131, 140-42 (App. Div. 1973), aff'd 64 N.J. 582, 586 (1974).
*75 Assuming arguendo such broad statements have validity and applicability, that is not the answer to the issue presented here. We are not faced with an issue of standing, but with a potential waiver of a right of personal privacy incorporated in this statute as an exception. This exception was specifically created to protect the individuals from having such private rights subjected to unwarranted invasion. The exercise of the right to this protection or to waive it and request a public hearing involves a personal decision on whether the individual desires his or her private personnel matters to be discussed in public. Further, under the statute, in order for a waiver to be effective, all who could be adversely affected by the discussion must agree to a waiver and request in writing that the matters be discussed in public. This statutory privilege cannot be transferred to a third party by implication. It is conferred personally on individuals who could be adversely affected by the action of the Board.
It is significant that the record does not contain any affidavits or statements from any of the 17 terminated employees indicating that (a) plaintiffs, or either of them, are authorized or empowered to request a public hearing for any one or all of the adversely affected employees; and (b) if given the opportunity to request a public hearing on their personnel matter, they would do so.
It is thus clear that while plaintiffs may institute and maintain a suit to challenge any action taken by a public body as violative of the Open Public Meetings Act, N.J.S.A. 10:4-15, the record before us does not demonstrate any authority on their part to request a public hearing on the private personnel matters of any or all of the "adversely affected" employees. In the absence of any indication in the record that this right has been validly transferred to or conferred on the plaintiffs, there is no warrant for our directing any further proceedings on the issues.
The judgment of the trial court dismissing the complaint is therefore, for this reason, affirmed.